# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JACOB EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2020-CV- _____ |
| | ) | |
| MARS WRIGLEY CONFECTIONERY US, LLC, | ) ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW, Plaintiff Jacob Edwards, through his counsel Kelly J. Trussell of the law firm of SLOAN, EISENBARTH, GLASSMAN, MCENTIRE & JARBOE, L.L.C., and for his claims against the Defendant, the Plaintiff alleges as follows:

## INTRODUCTION

This civil action is brought by Jacob Edwards to obtain redress for the disability discrimination and retaliatory discharge he suffered at his employment.

## PARTIES

1. Plaintiff Jacob Edwards is a Kansas resident.

2. Defendant Mars Wrigley Confectionary US, LLC ("Mars") is a limited liability company organized under the laws of Delaware, and is registered in Kansas as a Foreign Limited Liability Company.

3. Defendant Mars may be served with process through its Resident Agent, The Corporation Company, Inc., 112 SW 7th Street, Ste. 3C, Topeka, Kansas 66603.

4. Defendant Mars employs more than 500 employees.

5. Defendant Mars is an "employer" within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA")

6. Plaintiff was employed by Defendant Mars at its Topeka, Kansas location, as a wrapper operator, from approximately July 16, 2016, until approximately July 9, 2019, when he was terminated.

7. Plaintiff was an "employee" within the meaning of the ADA.

8. Plaintiff is a person with a disability, as defined by the ADA.

9. Plaintiff suffers from one or more impairments that substantially limit one or more major life activities.

10. Plaintiff is a person regarded by the Defendants as a person with a disability.

## JURISDICTION

11. This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction for state law claims).

12. All conditions precedent to jurisdiction under the ADA have been met, including: (i) charges of employment discrimination were timely filed with the Equal Employment Opportunity Commission and the Kansas Human Rights Commission; (ii) a Notification of Right to Sue was received from the EEOC; and

(iii) this Complaint has been filed within 90 days of the receipt of the Notification of Right to Sue. (See Exhibit 1.)

## VENUE

13. Venue is proper in this district under 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

14. Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

15. Plaintiff was hired by Defendant on or about July 16, 2016, to perform employment duties as a wrapper operator.

16. From approximately October 2018 through June 2019, Plaintiff reported Defendant's food and safety violations to his supervisors.

17. Plaintiff's reports were items such as:

    a. Candy covered in non-food grease from equipment chains;

    b. Metal detector alarms activating, demonstrating that candy contained metal from the food production;

    c. Hydraulic fluid from wrapper machines leaking onto candy in production;

    d. Candy wrapper materials were contaminated with rodent droppings and still in use by wrapper operators; and

    e. Paperwork inaccurately stating the candy production machines were cleaned appropriately was regularly submitted to inspection audits.

18. Plaintiff was told by his supervisors that he was a troublemaker due to his reports of the Defendant's food violations.

19. While employed by Defendant, Plaintiff also notified Defendant of his PTSD disability under the ADA.

20. While employed by Defendant, Plaintiff requested reasonable accommodations under the ADA to perform his employment duties.

21. Specifically, Plaintiff requested Defendant allow him the reasonable accommodation of extending his work breaks.

22. Defendant refused to accommodate Plaintiff's disability and denied his request for extended break times.

23. While employed by Defendant, Plaintiff's PTSD disability and medical condition was disclosed by Defendant to Plaintiff's co-workers.

24. Defendant then moved Plaintiff to the same employment team as the co-workers with knowledge of his PTSD disability.

25. While on this employment team, the co-workers repeatedly harassed and taunted Plaintiff for his PTSD disability.

26. Plaintiff reported the co-workers' disability harassment to Defendant's Human Resources Department and to his supervisor.

27. While on this employment team, the Plaintiff's medical disability rating doubled.

28. The Plaintiff's medical providers determined that the increase in his disability rating was caused by the stress of the co-workers' disability harassment of him.

29. Defendant acknowledged to Plaintiff that at least one co-worker's harassing behavior ("co-worker A") toward him was causing Plaintiff's PTSD to become worse.

30. Plaintiff's medical provider provided Defendant with the recommendation that co-worker A be moved to another employment team, to separate the stress and harassment of Plaintiff.

31. Defendant instead moved Plaintiff to another employment team, one with co-worker A's friends as members.

32. Co-worker A's friends continued the disability harassment and taunting of Plaintiff while he worked on their employment team.

33. Plaintiff reported the continued disability harassment and taunting by his co-workers to Defendant, through his supervisor.

34. The disability harassment and taunting of Plaintiff by his co-workers was so frequent or so severe that it created a hostile or offensive work environment.

35. Defendant took no action to cease the disability harassment of Plaintiff by his co-workers.

36. On or about July 3, 2019, due to his disability, Plaintiff took medical leave from his employment with Defendant.

37. On or about July 8, 2019, Plaintiff returned to work and Defendant placed him on employment suspension.

38. On or about July 9, 2019, Defendant terminated Plaintiff's employment.

## COUNT I:
## DISCRIMINATION AND HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF THE ADA

39. Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

40. At all times relevant to this Complaint, Plaintiff was disabled, as defined by the ADA.

41. Prior to Plaintiff's termination, Defendant was aware that Plaintiff had a record of having a disability, as defined by the ADA.

42. Plaintiff is a qualified individual, as defined by the ADA, due to his disability and/or Defendant's perception that Plaintiff is disabled.

43. Plaintiff was able to perform the essential functions of his job duties with Defendant with or without reasonable accommodation.

44. Defendant unlawfully and intentionally discriminated against Plaintiff based on his disability and/or because Defendant regarded him as disabled, and acted in bad faith by interfering with, recklessly disregarding, and denying his legal rights when Defendant terminated Plaintiff's employment.

45. Specifically, Defendant's conduct in violation of the ADA included:

    a. Refusing to provide Plaintiff with a reasonable accommodation, or engage in an interactive process by which to discuss the necessary reasonable accommodation of Plaintiff;

    b. Subjecting Plaintiff to additional and/or unreasonable job expectations due to his disability;

    c. Allowing, or not preventing, Plaintiff's harassment and taunting by his co-workers while Plaintiff performed his employment duties; and

    d. Terminating Plaintiff.

46. Plaintiff's disability and/or Defendant's perception that Plaintiff is disabled, was the motivating factor in Defendant's decision to terminate Plaintiff's employment.

47. Adverse employment action was taken against Plaintiff that was not taken against employees who did not share Plaintiff's disability.

48. Defendant's disability discrimination actions resulted in Plaintiff feeling disgraced, humiliated, frustrated, isolated, and troubled, among various other uncomfortable feelings.

49. As a direct and proximate result of Defendant's unlawful actions and/or omissions, Plaintiff has suffered injuries and damages, including, but not limited to, lost earnings, lost job benefits, as well as other monetary and non-monetary damages.

50. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered emotional distress and mental anguish and pain, and related compensatory damages.

51. By failing to take prompt and effective remedial action, Defendant effectively condoned, ratified and/or authorized the discrimination against Plaintiff.

52. Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for Plaintiff's rights, justifying an award of punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendant for damages, including, but not limited to: lost wages, lost benefits, compensatory damages, punitive damages, for reasonable attorney's fees and costs, pre and post judgment interest as allowed by law, and for such other and further relief as this Court deems just and proper.

## COUNT II:
## WRONGFUL TERMINATION FOR WHISTLEBLOWING

53. Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

54. Kansas law has a clear mandate of public policy against terminating employees who make good faith reports of an employer's conduct that violated rules, regulations, or the law pertaining to the public health and safety and the general welfare.

55. Plaintiff disclosed information regarding food and safety violations committed by Defendant, through actions of its employees, to his employment supervisors.

56. Plaintiff was terminated because of his good faith reporting of serious infractions of food and safety regulations.

57. Defendant's actions against Plaintiff were done willfully or maliciously; intentionally and in disregard of his legal rights.

58. Plaintiff has suffered damages of economic loss in addition to other non-economic damages.

WHEREFORE, Plaintiff prays for judgment against the Defendant for damages in excess of $75,000, consisting of non-economic and economic damages, punitive damages, and for such other and further relief that the Court deems proper.

Respectfully submitted,

/s/ Kelly J. Trussell
Kelly J. Trussell, #23161
SLOAN, EISENBARTH, GLASSMAN,
  McENTIRE & JARBOE, L.L.C.
534 S. Kansas Avenue, Suite 1000
Topeka, KS  66603-3456
Phone: (785) 357-6311
Fax:(785) 357-0152
ktrussell@sloanlawfirm.com
*ATTORNEYS FOR PLAINTIFF*

## DESIGNATION OF PLACE OF TRIAL
## AND DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury on all triable claims to take place in Topeka, Kansas.

Respectfully submitted,

/s/ Kelly J. Trussell
Kelly J. Trussell, #23161
SLOAN, EISENBARTH, GLASSMAN,
  McENTIRE & JARBOE, L.L.C.
534 S. Kansas Avenue, Suite 1000
Topeka, KS  66603-3456
Phone: (785) 357-6311
Fax:(785) 357-0152
ktrussell@sloanlawfirm.com
*ATTORNEYS FOR PLAINTIFF*